**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**COREY L. SCOTT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| SHAWN ANDERSON, )| |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1307-CR-607 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William J. Nelson, Judge
The Honorable David M. Hooper, Commissioner
Cause No. 49F18-0912-FD-98793

**March 13, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Shawn Anderson appeals his convictions for Class D felony criminal recklessness and Class A misdemeanor battery. We affirm.

**Issues**

Anderson raises two issues, which we restate as:

> I.      whether the State presented sufficient evidence to rebut Anderson's self-defense claim; and

> II.     whether the trial court properly admitted evidence of Anderson's prior criminal recklessness conviction.

**Facts**

On October 30, 2009, Ted Farrar was at home with his girlfriend and her brother when Anderson arrived at the apartment. Farrar and Anderson smoked crack cocaine together. Eventually, Farrar and Anderson left in Anderson's vehicle to pick up "Gwen" and obtain more drugs. Tr. p. 9. Farrar, Anderson, and Gwen split the drugs, and Anderson got upset because he thought Farrar got more drugs than Anderson or Gwen. Anderson became "real aggressive and violent," and Farrar said, "man, let me out of your car!" Id. at 11. Anderson pulled into a parking lot, and both men got out of the vehicle. Anderson started hitting Farrar, and Farrar "swung back" but his hood went over his head. Id. at 14. Farrar felt some "sharp pains," and Anderson continued hitting him. Id. When Anderson stopped hitting Farrar, Anderson said, "I'm gonna kill you." Id. at 15. Farrar then saw that Anderson had a blade in his hand. Anderson told Farrar, "I'm goin' to get my gun and I'll be back," and Anderson got in his vehicle and left. Id. Farrar saw

2

that he was bleeding heavily and managed to walk back to his apartment, where he obtained help. Farrar had been stabbed four times in the chest, back, and side.

The State charged Anderson with Class D felony criminal recklessness and Class A misdemeanor battery. At his jury trial, Anderson argued that he stabbed Farrar in self-defense. During Anderson's testimony, the State questioned him regarding his prior conviction for Class D felony criminal recklessness over Anderson's objection. The trial court found that Anderson had "open[ed] the door" to questions regarding the conviction. Id. at 107. The jury found Anderson guilty as charged. Anderson now appeals.

**Analysis**

*I. Self-Defense*

Anderson argues that the State failed to rebut his claim of self-defense. A valid claim of defense of oneself or another person is legal justification for an otherwise criminal act. Wilson v. State, 770 N.E.2d 799, 800 (Ind. 2002). At the time of Anderson's offense, Indiana Code Section 35-41-3-2(a) provided: "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force."[1] A claim of self-defense requires a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm. Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003). Further, a mutual combatant, whether or not the initial aggressor, must declare an armistice before he or she may claim self-defense. Id.

---

[1] Indiana Code Section 35-41-3-2 was subsequently amended by Pub. L. No. 161-2012, Section 1, effective March 20, 2012, and Pub. L. No. 13-2013, Section 139, effective April 1, 2013.

at 801; see Ind. Code § 35-41-3-2(e)(3) ("[A] person is not justified in using force if: . . . the person has entered into combat with another person or is the initial aggressor, unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action.").[2]

The standard of review for a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. Wilson, 770 N.E.2d at 800. We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. Id. When a claim of self-defense is raised and finds support in the evidence, the State has the burden of negating at least one of the necessary elements. Id. If a defendant is convicted despite his or her claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. Id. at 800-01.

According to Anderson, the jury heard three competing versions of the events— Farrar's initial report to the police, Farrar's trial testimony, and Anderson's trial testimony. Relying on his own testimony, Anderson argues that he acted without fault because he was intervening when Farrar threatened Gwen and that he was trying to protect himself and Gwen as Farrar beat him. On the other hand, Farrar testified that Anderson was angry over how the drugs were split and that Anderson was the initial

[2] Subsequently amended by Pub. L. No. 161-2012, Section 1, effective March 20, 2012, and Pub. L. No. 13-2013, Section 139, effective April 1, 2013.

aggressor by attacking Farrar. Anderson's argument merely is an invitation to reweigh the evidence and judge Farrar's credibility, which we cannot do. It was the jury's function to determine whether to believe Farrar or Anderson. We conclude that the State presented sufficient evidence to sustain Anderson's criminal recklessness and battery convictions and to rebut his self-defense claim.

## II. Evidence of Prior Conviction

Anderson argues that the trial court abused its discretion by admitting evidence of his prior conviction for Class D felony criminal recklessness. The admission of evidence at trial is a matter we leave to the discretion of the trial court. Clark v. State, 994 N.E.2d 252, 259-60 (Ind. 2013). We review these determinations for an abuse of discretion. Id. at 260. We reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. Id.

During Anderson's testimony at the trial, he said that Farrar was trying to take Gwen's purse. His attorney asked, "And how were you feeling as you saw that happening?" Tr. p. 102. Anderson responded, "I feel like he was putting me in a majorly bad position because I'm not the type of person that'd do things like that and that's robbery." Id. The State then argued that Anderson had opened the door to allowing character evidence to rebut this statement. Over Anderson's objection, the trial court agreed and allowed the State to cross-examine Anderson regarding his 2001 conviction for Class D felony criminal recklessness. During the cross-examination, the State asked Anderson, "[O]n your direct exam you said, 'I'm not the type of person who does stuff like that,' correct?" Id. at 110. When Anderson responded affirmatively, the State asked,

"Isn't it true in 2001, you were convicted of criminal recklessness?" Id. Anderson responded, "Well, I did do it." Id. There were no further questions regarding the 2001 conviction.

On appeal, Anderson argues that the admission of his 2001 conviction violates Indiana Evidence Rule 404(b), which at the time of Anderson's trial provided: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."[3] Although not mentioned by Anderson, we also note Indiana Evidence Rule 609(a), which at the time of Anderson's trial provided:[4]

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or an attempt of a crime shall be admitted but only if the crime committed or attempted is (1) murder, treason, rape, robbery, kidnapping, burglary, arson, criminal confinement or perjury; or (2) a crime involving dishonesty or false statement.

The evidence of Anderson's prior conviction for criminal recklessness was not admissible under Evidence Rule 609 because this offense did not fall within the allowed categories and did not involve dishonesty or a false statement. Such evidence ordinarily would not have been admissible for fear of the jury "making the 'forbidden inference' that the defendant had a criminal propensity and therefore engaged in the charged conduct." Thompson v. State, 690 N.E.2d 224, 233 (Ind. 1997). However, the State argues that Anderson's opened the door to questioning regarding the prior conviction

---

[3] Indiana Evidence Rule 404 was amended effective January 1, 2014.

[4] Indiana Evidence Rule 609 was also amended effective January 1, 2014.

with his testimony. Our supreme court has held that "otherwise inadmissible evidence may become admissible where the defendant 'opens the door' to questioning on that evidence. Jackson v. State, 728 N.E.2d 147, 152 (Ind. 2000).

Anderson's assertion that he was "not the type of person that'd do things like that and that's robbery," left a mistaken impression with the jury. Tr. p. 102. "[A] defendant who, through direct testimony, leaves the trier of fact with a false or incomplete impression of his criminal record may open the door to inquiries into his complete criminal history." Wales v. State, 768 N.E.2d 513, 519 (Ind. Ct. App. 2002) (citing 13 Robert Lowell Miller, Jr., Indiana Practice § 609.107, 166 (1995)), reh'g granted, 774 N.E.2d 116, trans. denied. We conclude that Anderson opened the door to inquiries into his criminal history. The trial court properly permitted the State to question Anderson regarding his 2001 criminal recklessness conviction. See, e.g., Wales, 774 N.E.2d at 117 (holding that the defendant opened the door to questioning regarding a prior criminal conviction).

## Conclusion

The State rebutted Anderson's self-defense claim, and the evidence is sufficient to sustain his conviction. Also, the trial court properly allowed Anderson to be cross-examined on his 2001 conviction for criminal recklessness. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.